| | | |
|---|---|---|
| TEONA LAKIA BRYANT, | * | IN THE |
| Plaintiff, | * | CIRCUIT COURT |
| v. | * | FOR |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION | * | BALTIMORE CITY |
| | * | CASE NO. _____ |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## REQUEST FOR ADMISSION OF FACTS

Plaintiffs, pursuant to Maryland Rule 2-424, request that the Defendant or Defendants admit the following facts relevant to the instant case, subject to the following Definition:

## DEFINITION

a. The term "Defendant" means and refers to the Defendant or Defendants who were served with these Requests for Admission of Facts and any and all of such Defendant's representatives or persons of any kind acting on behalf of such Defendant or Defendants, including, but not limited to, the Defendant's past or present employees, agents, representatives, contractors, or entities.

## REQUESTS FOR ADMISSION

1. That the Defendant is the owner of the premises herein involved as alleged in the instant Complaint.

2. That the Defendant was the owner of the said premises at the time the alleged lead poisoning occurred as set out in the instant Complaint.

3. That the Defendant personally or by agents, servants, and/or employees managed and operated the rental premises at the time the poisoning is alleged to have occurred.

4. That the premises were built over 50 years ago.

20

5. That the Defendant had personally visited the premises prior to the infant Plaintiffs' contraction of illness as set out in the Complaint.

6. That the Defendant had personally entered the area of the premises occupied by the Plaintiffs prior to the infant Plaintiffs' occupancy.

7. That the Defendant's agents had entered the area of the premises occupied by the Plaintiffs prior to the infant Plaintiffs' occupancy.

8. That the Defendant's agents had made repairs in the area of the premises occupied by the Plaintiffs.

9. That the Defendant was aware, prior to the infant Plaintiffs' occupancy of the premises of the presence of lead paint in the interior of the premises.

10. That the Defendant became aware of the presence of lead paint in the premises during the infant Plaintiffs' occupancy.

11. That the Defendant was aware prior to the infant Plaintiffs' occupancy of the presence of peeling and chipping paint in the interior of the premises.

12. That the Defendant became aware of the presence of peeling and chipping paint in the premises during the infant Plaintiffs' occupancy but before the infant Plaintiffs became ill.

13. That the Defendant knew that an infant was occupying the premises.

14. That the Defendant was aware that young children might occupy or visit the premises.

15. That the Defendant was aware, prior to the infant Plaintiffs' illness, of the hazard, which lead paint, posed to young children.

16. That the Defendant was aware, prior to the infant Plaintiffs' illness, that in a house of the age of the instant premises, there was a possibility of the presence of lead paint.

17. That the Defendant was aware that Baltimore City Ordinances required that the rental

premises owned by the Defendant be kept in habitable condition.

18. That the Defendant was aware that Baltimore City Ordinances and Maryland statutes banned the use of lead based paint.

19. That a house, which contains chipping lead, based paint and lead dust is not fit for human habitation.

20. That the Defendant was aware that Baltimore City Ordinances required that interior surfaces of rental buildings be kept free of loose, flaking or peeling paint.

21. That the Defendant was aware of prior instances of lead paint poisoning contracted on the premises.

22. That the Defendant was aware that children in adjoining premises, built at the same time as the Defendant's premises, had contracted lead paint poisoning.

23. That the Defendant, although aware of the danger of lead paint poisoning on the premises, failed to warn the infant Plaintiffs' parents of the danger.

24. That the Defendant was aware of the danger of lead based paint to children by virtue of prior court actions against him as a defendant for the alleged contraction of lead poisoning by infants residing in premises, which he owned.

25. That although the Defendant was aware generally of the poisonous character of lead paint he failed to inspect for its presence on the premises.

26. That the Defendant did not inspect his premises, prior to renting it, for the presence of chipping or flaking paint.

27. That the Defendant failed to ensure that areas of lead paint were not accessible to infant children.

28. The Defendant was aware prior to the child's alleged injury that houses in Baltimore

City built before approximately 1950 often contain lead paint.

29. The Defendant had reviewed the requirements of the Housing Code regarding maintenance of rental properties prior to renting out the instant premises.

30. The Defendant had not reviewed the requirement of the Housing Code regarding maintenance of rental properties prior to renting out the instant premises.

31. The Defendant was aware, prior to the alleged injury of the Plaintiffs, that Section 706 of the Housing Code prohibited the use of lead-based paint for interior painting.

32. Since 1966, the use of lead-based paint for interior painting has been prohibited in Baltimore City.

33. Prior to the Plaintiffs' alleged injury, the Defendant was aware of instances in which children had been injured by exposure to lead-based paint.

34. Prior to the Plaintiffs' alleged injury, the Defendant had received violation notices from the Baltimore City Health Department for lead paint violations in other properties owned by the Defendant.

35. Prior to the Plaintiffs' alleged injury, the Defendant had been sued for lead poisoning injuries alleged to have been suffered by other children.

36. Prior to the Plaintiffs' alleged injury, the Defendant had become generally aware of the problem of lead paint poisoning in older housing.

37. Prior to the Plaintiffs' alleged injury, the Defendant had read about Baltimore City's lead paint poisoning problem in newspapers.

38. Prior to the Plaintiffs' alleged injury, the Defendant had watched television news reports which concerned Baltimore City's lead paint poisoning problem.

39. Prior to the Plaintiffs' alleged injury, the Defendant had heard radio reports, which

concerned the dangers of lead paint.

40. Prior to the Plaintiffs' alleged injury, the Defendant had received educational material distributed by the Baltimore City Health Department setting out the hazards of lead paint.

41. Prior to the Plaintiffs' injury, the Defendant had attended meetings of the Property Owners Association.

42. Prior to the Plaintiffs' injury, the Defendant was a member of the Property Owners Association.

43. Prior to the Plaintiffs' injury, as a member of the Property Owner's Association, the Defendant received and read the literature distributed by that organization.

44. Prior to the Plaintiffs' injury the Defendant was aware that the use of lead based paint for interior painting had been banned statewide.

45. Prior to the Plaintiffs' injury, the Defendant had attended seminars or meetings at which avoiding lead paint liability was discussed.

46. Prior to the Plaintiffs' injury, the Defendant had discussed the problem of claims for lead paint poisoning injuries with other landlords or property managers.

47. Prior to the Plaintiffs' alleged injury, in the course of acting as a property manager, the Defendant became aware that lead paint was often present in older houses.

48. Prior to the Plaintiffs' alleged injury, the Defendant discussed the availability of insurance on rental properties with an insurance agent or broker.

49. Prior to the Plaintiffs' alleged injury, the Defendant obtained a policy of insurance on the subject property, which provided coverage in the event of an injury caused by lead paint poisoning.

50. Prior to the Plaintiffs' alleged injury, the Defendant was advised by an insurance agent, broker, or carrier that injuries caused by lead paint poisoning on the subject property were

excluded from coverage.

51. Prior to the Plaintiffs' injury, the Defendant or the Defendant's agent had discussed the availability of insurance to cover lead paint injuries with an insurance agent or broker.

52. Prior to the Plaintiffs' injury, the premium for the Defendant's insurance policy on the subject premises had been increased as a result of the possibility of lead paint injuries on the premises.

53. Prior to the Plaintiffs' injury, the Defendant had seen lawyer advertisements for injuries caused by lead paint.

54. Prior to the Plaintiffs' injury, the Defendant had read proposed legislation dealing with the problem of lead paint poisoning.

55. Prior to the Plaintiffs' alleged injury, the Defendant had discussed proposed legislation dealing with lead paint with other persons.

56. Prior to the Plaintiffs' presence in the dwelling, the Defendant had inspected the dwelling.

57. Prior to the inception of the tenancy of the Plaintiffs, the Defendant had inspected the dwelling.

58. Prior to the inception of the tenancy during which the Plaintiffs was present in the dwelling, the Defendant had inspected the dwelling.

59. Prior to the alleged injury of the Plaintiffs, the Defendant had heard about other property owners whose properties had been cited for lead paint hazards.

60. Prior to the Plaintiffs' alleged injury, the Defendant had been notified that the paint in the premises was not intact and tight.

61. Prior to the Plaintiffs' alleged injury, the Defendant had visited the premises.

62. Prior to the Plaintiffs' alleged injury, agents of the Defendants had entered the

premises.

63. Prior to the Plaintiffs' alleged injury, the Defendant had caused repairs to be performed in the premises.

64. During the time the Plaintiffs child was present in the premises the Defendant had retained a property manager to supervise the repair and maintenance of the premises.

65. The Defendant's property manager had been present in the dwelling prior to the child's alleged injury.

66. The Defendant's property manager was aware prior to the Plaintiffs' alleged injury that lead based paint was often present in older houses.

67. The Defendant's property manager had received violation notices for lead paint in other houses prior to the Plaintiffs' alleged injury.

68. The Defendant's property manager had been sued for alleged lead paint injuries in other houses prior to the Plaintiffs' alleged injury.

69. The Defendant has participated in the Federal Section 8 Rent Subsidy Program.

70. The Defendant had participated in the Federal Section 8 Rent Subsidy Program before the injuries alleged herein.

71.     The Defendant's rental property contained chipping, peeling and flaking paint on interior surfaces during the entire time that the Plaintiffs lived in the Defendant's rental property.

*[signature]*
Brian S. Brown, Esquire
(CPF No. 8512010055
*Brown & Barron, LLC*
7 St. Paul Street, Suite 800
Baltimore, Maryland 21202
T. (410) 547-0202
F. (410) 332-4509
bbrown@brownbarron.com